**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MEDI-JAH K., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | )   Case No. 4:25-CV-763-JSD |
| | ) |
| FRANK BISIGNANO, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM OPINION</u>**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Frank Bisignano, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Medi-Jah K. ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 7.) For the reasons stated herein, the Court affirms the Commissioner's denial of Plaintiff's application.

### I.   BACKGROUND

On June 30, 2022, Plaintiff applied for DIB and SSI, alleging disability as of April 1, 2022. (Tr. 573-78.) In his Disability Report, Plaintiff alleged disability due to anxiety, depression, and post-traumatic stress disorder ("PTSD"). (Tr. 613.) Plaintiff's claims were denied initially and on reconsideration. (Tr. 478, 491.) Plaintiff then filed a Request for Hearing by Administrative Law Judge ("ALJ"). (Tr. 500.)

ALJ Katherine Jecklin held initial and supplemental telephone hearings on October 30, 2023, and May 6, 2024, respectively. (Tr. 391-435.) At the hearings, Plaintiff testified to the following: he is 32-years old and has a bachelor's degree in math; he previously performed janitorial duties at Walmart, but his need to take breaks throughout the day frustrated his co-workers; he struggles with difficulties concentrating due to racing thoughts, sudden changes in mood, and fatigue; he has flashbacks every hour and struggles with controlling his anger; and he lives with his dad and is able to do all household chores, bathe, and drive. (Tr. 398-99, 401-10, 419, 424, 427.) The ALJ issued an unfavorable decision on May 23, 2024. (Tr. 151-67.) Plaintiff timely filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council (Tr. 144-47), which was denied on April 2, 2025 (Tr. 1-7). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

The Court accepts the facts as set forth in the parties' respective statements of fact and responses. The Court will cite specific portions of the transcript as needed to address the parties' arguments.

## II.     STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Act, a claimant must prove she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that

2

he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509 or § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Moore*, 572 F.3d at 523; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

### III.    THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found as follows: Plaintiff has not engaged in substantial gainful activity since the alleged onset date of April 1, 2022; Plaintiff has the severe impairments of depressive disorder, generalized anxiety disorder, and PTSD; and

Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 154.) The ALJ found that Plaintiff has the RFC to:

> perform a full range of work at all exertional levels but with the following non-exertional limitations: he can understand, remember, and maintain the concentration, persistence, and pace required to perform simple tasks in a routine work setting and make simple, work-related decisions. He can adapt to occasional workplace changes that are predictable and introduced gradually. He can perform work requiring no direct contact with the public and occasional interaction with coworkers. His ability to tolerate and respond appropriately to supervision would be adequate to handle ordinary levels of supervision in the described work setting.

(Tr. 157). At Step Four, the ALJ found that Plaintiff did not have past relevant work (Tr. 165); and at Step Five, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform (Tr. 166).

**IV.   DISCUSSION**

Plaintiff challenges the ALJ's decision on the following two grounds: (1) the ALJ failed to properly evaluate medical opinion evidence, and (2) the RFC is not supported by substantial evidence. (ECF No. 17.)

**A.  Standard for Judicial Review**

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)); *see* 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the

5

Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted); *see Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (quoting *Consol. Edison*, 305 U.S. at 229)).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *See Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## B.  ALJ's Evaluation of Medical Opinion Evidence

The ALJ's treatment of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. Under this Regulation, ALJs are to consider all medical opinions equally and evaluate their persuasiveness according to several specific factors, including supportability, consistency, the medical source's relationship with the claimant, specialization, and other factors such as the source's understanding of the Social Security Administration's disability policies and their familiarity with other evidence in the claim. 20 C.F.R. § 404.1520c(c). "The first two factors – supportability and consistency – are the most important." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(a)). ALJs must "articulate in [their] determination

or decision how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 404.1520c(b). The ALJ's reasoning needs to be "clear enough to allow for judicial review." *Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021).

Plaintiff contends that the ALJ erred in evaluating the prior administrative medical findings (PAMFs) of the State agency psychological consultants, Steven Akeson, Psy. D., and Dr. Charles Waston, Psy. D., and the opinion of psychiatric consultative examiner, Alison Burner, M.A. (ECF No. 17 at 3-6.) Specifically, Plaintiff argues that the ALJ failed to articulate supportability and consistency in finding these opinions somewhat or partially persuasive. (*Id.*) This Court disagrees.

In reviewing the opinions of Dr. Akeson and Dr. Watson, the ALJ explained that "[t]he opinions of moderate limitations are supportable given their review of the medical evidence of record, including the consultative examination, and [Plaintiff's] function report." (Tr. 163.) The ALJ further explained that Dr. Akeson and Dr. Watson "noted [Plaintiff's] medications and therapy for reported symptoms including flashbacks of trauma, poor concentration, and social isolation[,]" but their opinion for "limited social contact is vague and does not define the specific work-related limitations." (*Id.*) The ALJ "accounted for [Plaintiff's] limitations due to social anxiety, limited social interactions, and reported anger issues in limiting him to no direct contact with the public and occasional interaction with coworkers." (*Id.*) However, the ALJ found unpersuasive any limitations to Plaintiff's ability to interact with supervisors, because Plaintiff "did not allege difficulties with authority figures and his behavior with treatment providers was cooperative and engaged, showing an ability to interact appropriately with supervisors." (*Id.*) The ALJ continued, reasoning that "[Plaintiff] has been able to maintain part-[time] employment, suggesting an ability to interact with supervisors[,] and he reported no difficulties in that work due to problems

7

interacting with the public or his coworkers." (*Id.*) The ALJ also found the opinion for a limitation to one-two step tasks to be unpersuasive. (*Id.*) He reasoned that this limitation was vague, as it did not define what constitutes a "step." (*Id.*) The ALJ concluded by finding that "[t]he moderate limitations in functioning are adequately addressed by the [RFC,] but additional restrictions are not consistent with the evidence," which includes "a largely normal psychiatric consultative examination and generally unremarkable mental status exams, [Plaintiff's] ability to handle his own care and daily activities, and his ability to obtain and maintain at least some part-time employment." (*Id.*)

The ALJ adequately articulated the supportability of Dr. Akeson's and Dr. Watson's opinions by discussing their explanations and opinions in relation to the medical evidence on which they relied. *See* 20 C.F.R. § 404.1520c(c)(1) (to assess supportability, ALJ is to consider the relevancy of the objective medical evidence and supporting explanations provided by the medical source to support his or her medical opinion or PAMF); *see also Howard H. v. Comm'r of Soc. Sec.*, No. 2:20-CV-4932, 2022 WL 765217, at *5 (S.D. Ohio Mar. 14, 2022) (noting that the ALJ's analysis "partially blends the supportability and consistency analyses" but finding that "in this particular setup, with one doctor basing their opinion on another's findings that are also in the record, overlap is inevitable."); *Starman v. Kijakazi*, No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) (in articulating supportability, ALJs may consider, for example, whether the physician's treatment notes support the opinion and whether the physician provided a detailed explanation for his or her opinion) (listing cases). The ALJ also adequately articulated consistency by comparing the opined limitations with the medical evidence in the record and Plaintiff's testimony and activities of daily life. *See* 20 C.F.R. § 404.1520c(c)(2) (to assess consistency, ALJ is to compare the medical opinion with "evidence from other medical sources

8

and nonmedical sources in the claim"); *see also Oleary v. Dudek*, 4:23-CV-725-MTS, 2025 WL 962313, (E.D. Mo. March 31, 2025) ("The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed.") (quotation marks and citation omitted). Thus, the ALJ sufficiently supported her finding that Dr. Akeson's and Dr. Watson's opinions were somewhat persuasive.

The ALJ also sufficiently evaluated Ms. Burner's medical opinions regarding Plaintiff's degree of mental impairment, reviewing her medical opinions for each area of mental functioning and discussing the supportability and consistency of each opinion. (Tr. 163-64). The ALJ found that Ms. Burner's opinion that Plaintiff had no limitation in understanding, remembering, or applying information was not supported by Ms. Burner's examination notes observing inadequate recent and past memory, *see* 20 C.F.R. § 404.1520c(c)(1), and was inconsistent with Plaintiff's subjective complaints of issues with understanding and memory, *see* 20 C.F.R. § 404.1520c(c)(2). The ALJ next found that Ms. Burner's opinion of moderate limitations in maintaining concentration, persistence, and pace was persuasive, as the opinion was supported by the subjective complaints noted during the examination of poor concentration, racing thoughts, and flashbacks, *see* 20 C.F.R. § 404.1520c(c)(1), and was consistent with Plaintiff's complaints of poor concentration and focus throughout the record, *see* 20 C.F.R. § 404.1520c(c)(2).

The ALJ also found Ms. Burner's opinions of moderate to marked impairment in interacting with others and marked to moderate impairment in adapting and managing oneself unpersuasive. In reaching this conclusion, the ALJ explained that the opinions are not supportable by the examination findings, are based largely on Plaintiff's subjective complaints, and failed to account for Plaintiff's reports of his activities of daily life. *See* 20 C.F.R. § 404.1520c(c)(1); *see also Jill O. v. O'Malley*, No. 4:23 CV 963 JMB, 2024 WL 6979493, at *10 (E.D. Mo. Sep. 3, 2024)

9

(finding that, in assessing supportability, an ALJ may consider whether the physician's treatment notes support his opinion and may give the physician's opinion less deference when based on plaintiff's subjective complaints rather than objective medical evidence). The ALJ also explained that the opinions were inconsistent with Plaintiff's reported activities of daily life and his medical and psychiatric records, which showed, among other things, that Plaintiff was able to consistently cooperate with treatment providers and that he reported no problems being in a public setting while working at Walmart.[1] *See* 20 C.F.R. § 404.1520c(c)(2); *see also Collins v. Kijakazi*, No. 6:20-CV-03237-MDH, 2021 WL 3909670, at *3 (W.D. Mo. Aug. 31, 2021) (finding ALJ properly considered consistency by comparing the opinion with the plaintiff's medical records, treatment history, and activities of daily life).

Plaintiff argues that his ability to attend medical appointments, communicate with doctors, and manage daily needs does not constitute evidence of his ability to sustain full-time competitive work. (ECF No. 17 at 5-6.) This argument mischaracterizes the ALJ's findings, as the ALJ did not find that Plaintiff's ability to cooperate with treatment demonstrated his ability to work; instead, the ALJ found that Plaintiff's "ability to consistently cooperate with treatment providers and engage in treatment is inconsistent with marked social limitation." (Tr. 164.) The ALJ further found that the records showed Plaintiff consistently had good eye contact and referenced friends visiting.

---

[1] Plaintiff challenges the ALJ's conclusion that he had no problems interacting with others at Walmart as inconsistent with his testimony. (ECF No. 17 at 6.) This argument is unpersuasive, as Plaintiff did not testify that he had difficulty interacting with customers or coworkers due to his social or self-management abilities; rather, he testified that his difficulties with coworkers were the result of his need to rest. (Tr. 401-02.) Moreover, the ALJ discussed other evidence substantially supporting her conclusion, including findings of good judgment and insight, Plaintiff's relationships with family and friends, and his activities of daily life. *See Biestek*, 139 S. Ct. at 1154; *see also Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) ("[T]he ALJ is free to accept some, but not all, of a medical opinion….[a]nd the ALJ is not required to explicitly...reconcile every conflicting shred of medical evidence.").

(*Id.*) Plaintiff's ability to cooperate with his providers is relevant to his level of social limitation, and the ALJ's consideration of such was permissible. *See William D. v. Saul*, No. 4:18 CV 1735 JMB, 2020 WL 1047807, at *13 (E.D. Mo. Mar. 4, 2020) (stating that the ALJ's finding that the plaintiff was, among other things, able to occasionally interact with the public and coworkers, was supported by evidence of the plaintiff's cooperation with treatment providers and demonstrated his ability to interact with others); *see also Palen v. Colvin*, No. 4:13CV3157, 2014 WL 2949295, at *16 (D. Neb. July 1, 2014) (finding ALJ reasonably considered the plaintiff's reports of social functioning as inconsistent with marked social limitations). For all these reasons, the ALJ sufficiently supported her finding that Ms. Burner's opinions were partially persuasive.

### C.  RFC Determination

An RFC is the most a claimant can still do, despite the claimant's physical and mental limitations. 20 C.F.R. § 416.945(a)(1). "The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000); 20 C.F.R. § 416.945(a)(1). "Ultimately, the RFC determination is a 'medical question' that 'must be supported by some medical evidence of [the plaintiff's] ability to function in the workplace.'" *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)). "Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional." *Williams v. Saul*, No. 2:19-CV-88 RLW, 2021 WL 1222770, at *10 (E.D. Mo. Mar. 31, 2021) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). However, the "interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citation omitted). Nonetheless, it is the claimant's burden of proof to establish the RFC. *See Despain v. Berryhill*, 926 F.3d 1024,

11

1027 (8th Cir. 2019); 20 C.F.R. § 404.1512(a). While an ALJ is not permitted to draw his/her own inferences about a claimant's functional ability from medical reports, *see Combs*, 878 F.3d at 646, there is no requirement that an RFC finding be supported by a specific medical opinion, *see Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022). Finally, "[w]here the medical evidence is equally balanced ... the ALJ resolves the conflict." *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995).

Plaintiff argues that the RFC is not supported by substantial evidence, as it fails to account for Plaintiff's subjective complaints regarding the severity of his flashbacks and ability to concentrate. (ECF No. 17 at 6-8.) On the contrary, the record reflects that the ALJ properly evaluated Plaintiff's subjective complaints in light of the medical evidence. Moreover, substantial evidence supports the RFC.

The ALJ did not err in comparing the severity of Plaintiff's subjective complaints to the symptoms reflected in his treatment records, and the ALJ properly supported her credibility determination with "good reasons and substantial evidence." *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (court defers to the ALJ's determinations regarding Plaintiff's subjective complaints if they are "supported by good reasons and substantial evidence"; "ALJ may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." (quoting *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016))). The ALJ also considered Plaintiff's reports of poor concentration and flashbacks in limiting him to simple tasks in a routine work setting and simple work-related decisions. (Tr. 165.) She explained that although Plaintiff testified to flashbacks occurring hourly, lasting several hours or half-days, and causing him to "[lose] himself," the treatment notes do not show that any provider ever witnessed one of these flashbacks nor do they reflect that Plaintiff reported such extensive flashbacks. (Tr. 159, 165.) The ALJ further explained that Plaintiff's treatment notes frequently reported Plaintiff

spending his days reading, and while he alleged some issues related to focusing while reading, treatment records did not document any deficits limiting him to reading one page every two hours as he testified. (Tr. 159.) Because the ALJ evaluated Plaintiff's subjective complaints in light of the entire record, particularly considering the medical evidence and Plaintiff's daily activities, the ALJ did not err in making the credibility determination. *See Schwandt*, 926 F.3d, at 1012.

This Court also finds that the RFC determination is supported by substantial evidence because after considering each functional area of Plaintiff's mental limitations, discussing Plaintiff's subjective complaints and daily activities, and thoroughly reviewing his treatment notes and history, the ALJ explained each limitation and based the RFC on the entire record (Tr. 155-65). *See Consol. Edison*, 305 U.S. at 229 ("Substantial evidence … means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."); *Nelson v. Colvin*, No. 11-3292-CV-S-DPR, 2013 WL 2646698, at *1 (W.D. Mo. July 12, 2023) ("[A] court should not disturb an ALJ's denial of benefits if the decision 'falls within the available zone of choice.' A decision may fall within the 'zone of choice' even where the court 'might have reached a different conclusion had [the court] been the initial finder of fact.'" (quoting *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011))); *see also Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016) (even if substantial evidence in record could have supported contrary outcome, this court must affirm ALJ's decision if there is also substantial evidence to support it).

The remainder of Plaintiff's arguments amount to a request to reweigh the evidence, as he merely argues that other evidence in the record supports a different conclusion than reached by the ALJ. (ECF No. 17 at 8-12.) The Court declines to reweigh the evidence or substitute its judgment for the ALJ's substantially supported conclusions. *See Adair v. Saul*, 816 Fed.Appx. 26, 27 (8th Cir. 2020) (per curiam) ("In reviewing the ALJ's decision, we do not reweigh the evidence….

13

Rather, we will affirm if there is substantial evidence in the record as a whole, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome ourselves.") (quotations omitted); *see also Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) ("We may not reverse that decision simply because we would have reached a different conclusion than [the Commissioner] or because substantial evidence supports a contrary conclusion.").

V.    CONCLUSION

Based upon the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED.**

JOSEPH S. DUEKER
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of July 2026.